JASON M. FRIERSON
United States Attorney
District of Nevada
Nevada Bar Number 14853
JACOB OPERSKALSKI
Assistant United States Attorney
501 Las Vegas Boulevard South, Suite 1100
Las Vegas, Nevada 89101
(702) 388-6336 / Fax: (702) 388-5087
Jacob.Operskalski@usdoj.gov
*Attorneys for United States of America*

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEVADA**

| | |
|---|---|
| UNITED STATES OF AMERICA, <br><br> Plaintiff, <br><br> vs. <br><br> DANIEL ENRIQUE PEREZ-TORRES, <br><br> Defendant. | Case No.: 2:20-CR-000156-RFB <br><br> Government's Sentencing Memorandum and Response to Daniel Enrique Perez-Torres' Sentencing Memorandum (ECF No. 392) |

The United States of America hereby files this sentencing memorandum and response to Daniel Enrique Perez-Torres' Sentencing Memorandum, ECF No. 472. The Presentence Investigation Report ("PSR") recommends an 57-month sentence to be followed by three years of supervised release. For the reasons stated herein, the government recommends a sentence of 46 months to be followed by three years of supervised release.

**I.    Factual and Procedural Background**

On January 6, 2020, Perez-Torres and his fellow MS-13 member coconspirators sold 825.8 grams of actual methamphetamine to Confidential Informants (CIs) in exchange for four-thousand dollars, and a three-hundred dollar broker fee to Escalante-Trujillo.

Thereafter, on January 27, 2020, Perez-Torres and his fellow MS-13 member

1

coconspirators sold 432.2 grams of actual methamphetamine to CIs in exchange for two-thousand dollars. Perez-Torres accepted the payment for this transaction from a CI. In total, he played a role as a co-conspirator in selling 1,258 grams of actual methamphetamine.

On March 7, 2023, Perez-Torres pleaded guilty pursuant to a plea agreement, ECF No. 352, to a one-count Superseding Information, charging him with Conspiracy to Distribute a Controlled Substance in violation of 21 U.S.C. §§ 841(a)(1), 841(b)(1)(C), and 846. ECF Nos. 350 and 353. In doing so, Perez-Torres admitted to his role in this methamphetamine distribution conspiracy. Sentencing is currently scheduled for September 14, 2023.

## II.   Guideline Calculations

The calculations in the PSR do not comport with those stipulated in the plea agreement. There is considerable overlap between the agreement of the parties (that is based on the evidence) and the PSR's calculations, but the differences are noted below. Although government is recommending a Total Offense Level that is lower than that calculated in the PSR, as the Court is required to calculate the offense level accurately, the government must object to the current PSR calculations.[1]

### A. Calculations based on the Plea Agreement and Evidence

Pursuant to U.S.S.G. § 2D1.1(c)(3), the Base Offense Level based on the amount of narcotics attributable to Perez-Torres (1,258 grams of actual methamphetamine) is 34. The government is moving for a reduction of three levels for acceptance of responsibility under U.S.S.G. § 3E1.1(a) and (b). This results in an Offense Level of 31.

---

[1] In reliance on the parties stipulations, undersigned counsel did not review and file timely objections to the PSR. Nonetheless, in the interest of accuracy, the Government's objections are raised herein.

The government concurs that defendant is eligible for "safety valve" relief pursuant to 18 U.S.C. § 3553(f)(5) and U.S.S.G. § 5C1.2. Accordingly, he is eligible for the two-point reduction under U.S.S.G. § 2D1.1(b)(18), making his offense level 29.

In the plea agreement, the government agreed to advocate for a four-point downward variance as part of a group plea offer. ECF No. 352 at 8. Defendant has met the requirements for this benefit, which brings his offense level to 25.

In light of the United States Sentencing Commission's proposed amendment to § 4C1.1 to lower the base offense level for Zero Point Offenders by two levels, the Government recommends an additional two-level downward variance to the defendant's base offense level after the Court has calculated and applied the Guideline range. Because the government is recommending that this reduction be applied before the proposed amendment takes effect, Perez-Torres will not be eligible for the same reduction a second time once the proposed amendment take effect.

After the application of that reduction, the Total Offense Level is 23. Perez-Torres is in Criminal History Category I, so the applicable range is 46-57 months.

**B. Objections to the PSR**

The government objects to a number of factual statements and legal conclusions in the PSR. Most importantly, the PSR calculates a Base Offense Level of 36 based on 2.25 kilograms of methamphetamine. PSR ¶ 83. The government objects to this paragraph because, as the parties stipulated, Perez-Torres took part in two narcotics sales for a total of 1,258 grams of actual methamphetamine. Paragraph 83 appears to rely on errors in paragraphs 60 and 62.

Paragraph 60 states that the transaction on January 6, 2020 was for 433.4 gross grams of methamphetamine. The transaction was for 825.8 grams of actual methamphetamine.

Paragraph 62 includes Perez-Torres in a transaction for which he was not present and involving a count for which he was not charged. His name should be stricken from this paragraph.[2]

The PSR also concluded that Perez-Torres qualifies for a 2-level minor participant reduction. PSR ¶ 86.[3] The facts of this case do not support this reduction.

United States Sentencing Guidelines Section 3B1.2(b) provides for a two-level reduction in a defendant's sentence "[i]f the defendant was a minor participant in any criminal activity." It is the defendant's burden to prove he is entitled to a downward adjustment based on his role in the offense. *United States v. Diaz*, 884 F.3d 911, 914 (9th Cir. 2018). While recognizing that the parties' agreements do not bind the Court, the parties stipulated to calculations that do not include the minor role adjustment and agreed that "they will not seek to apply or advocate for the use of any other base offense levels or any other specific offense characteristics, enhancements, or reductions. . . ." ECF No. 352 at 8.

More importantly, the evidence does not support the reduction. To be eligible for a minor role adjustment, the defendant must be "substantially less culpable than the average participant in the criminal activity." U.S.S.G. § 3B1.2, cmt. 3(A). The following three-step analysis is required to determine whether a defendant is entitled to a minor role adjustment:

> First, the court must identify all of the individuals for whom there is sufficient evidence of their existence and participation in the overall scheme. Second, the court must calculate a rough average level of culpability for these individuals, taking into consideration the five factors in comment 3(C) to the Mitigating Role Guideline. Third,

---

[2] The amount of methamphetamine according to a laboratory report should be 1328.1 grams, but that change should be irrelevant to Perez-Torres.

[3] If the minor role adjustment were applicable, the Court would also apply a further reduction pursuant to U.S.S.G. § 2D1.1(a)(5). The PSR did not apply that reduction despite deeming Perez-Torres' role to be minor. If the Court agrees with the PSR's determination regarding minor role, the Court would reduce the offense level an additional 3 levels pursuant to U.S.S.G. § 2D1.1(a)(5)(ii). Because Perez-Torres role was not minor, none of this should apply.

> the court must compare the defendant's culpability to that average. If the defendant is substantially less culpable than that average and meets the other criteria, he should be granted a mitigating role adjustment. If the defendant is not substantially less culpable than that average, he is not eligible for the adjustment.

*United States v. Dominguez-Caicedo*, 40 F.4th 938, 960 (9th Cir. 2022) (quotations omitted).

Perez-Torres was part of a criminal conspiracy that involved eleven codefendants – he acted as an average participant who helped facilitate drug deals. He was directly involved in two transactions and worked with Escalante-Trujillo, Reyes, and Nieto-Romero. In order to calculate the rough average level of culpability for the individuals identified under prong one, the Court must consider the following five factors:

> (i) the degree to which the defendant understood the scope and structure of the criminal activity;
>
> (ii) the degree to which the defendant participated in planning or organizing the criminal activity;
>
> (iii) the degree to which the defendant exercised decision-making authority or influenced the exercise of decision-making authority;
>
> (iv) the nature and extent of the defendant's participation in the commission of the criminal activity, including the acts the defendant performed and the responsibility and discretion the defendant had in performing those acts;
>
> (v) the degree to which the defendant stood to benefit from the criminal activity.

U.S.S.G. § 3B1.2, cmt. 3(C). Although the Court "must consider all of these factors when determining whether to grant a mitigating-role adjustment[,]" *United States v. Rodriguez*, 44 F.4th 1229, 1233 (9th Cir. 2022), they are a "non-exhaustive list of factors." U.S.S.G. § 3B1.2, cmt. 3(C). Under the Guidelines, "[t]he determination whether to apply [a mitigating role adjustment] is based on the totality of the circumstances and involves a determination that is heavily dependent upon the facts of the particular case." U.S.S.G. § 3B1.2, cmt. 3(C).

Perez-Torres is not an authority figure like Escalante-Trujillo, Ayala-Flores, and Perez Carias, but his role was more involved than those of Reyes and Rico. Perez-Torres is a confirmed member of MS-13 and was involved in two major methamphetamine transactions. He acted similarly to a defendant like Nieto-Romero – not a shot-caller, but an integral player who acted right alongside a leader like Escalante-Trujillo. This is not a case of a one-time, out-of-character occurrence. Although Perez-Torres claims he did not financially benefit from the transactions in this case, he worked for MS-13, so he benefitted by earning credibility and favor with his criminal organization even if each transaction did not benefit him financially. The facts demonstrate that Perez-Torres' culpability is that of an average MS-13 member of this conspiracy, and therefore, the government objects to paragraph 86 (and the resulting calculations).

### III.   Argument

The framework for determining an appropriate sentence is set forth in 18 U.S.C. § 3553(a), which requires that the Court ensure the sentence imposed properly considers, among other factors: (1) the nature and circumstances of the offense; (2) the history and characteristics of the defendant; (3) the need to reflect the seriousness of the offense and promote respect for the law; (4) the need to afford adequate deterrence; and (5) the need to avoid unwarranted sentencing disparities. The government highlights the following considerations.

**A. Seriousness of the offense**

Perez-Torres has accepted responsibility for his role in selling a significant quantity of methamphetamine, an amount that was worth thousands of dollars to his MS-13 co-conspirators. As this Court is aware, trafficking in methamphetamine is not a victimless crime. Perez-Torres demonstrated that he was an active member of the drug trade, a trade that perpetuates overdoses, violence, and addictions; and ruins lives and entire communities. The sentence imposed should

reflect the seriousness of Perez-Torres' involvement in selling methamphetamine with and for MS-13.

### B. The history and characteristics of the defendant

As this Court is well aware and the government argued in relation to Nieto-Romero, an individual does not gain access and trust with large quantities of pure methamphetamine without established connections in the drug trade. The sentence imposed should reflect that this was not a one-time occurrence for this defendant – the two transactions that Perez-Torres has accepted responsibility for were simply a part of his criminal lifestyle.

Additionally, Perez-Torres has admitted his longstanding involvement with MS-13 dating back to his time in El Salvador. The sentence imposed should serve to deter him from continuing his life amongst violent, dangerous, drug and gun trafficking defendants.

### C. A further downward departure or variance is not warranted

The plea agreement in this case resulted in Perez-Torres being charged and sentenced pursuant to 21 U.S.C. §§ 841(a)(1), 841(b)(1)(C), and 846, which does not invoke a mandatory minimum sentence. At sentencing, the government will move to dismiss Counts Two, Eleven, and Thirteen of the Indictment as to this defendant; each of those counts carried a mandatory minimum sentence of ten years imprisonment.

There are a number of mitigating circumstances that apply to Perez-Torres. He has demonstrated his ability to work legitimate employment at a fast-food restaurant despite the difficulty of doing so as someone who is not in the United States legally. He demonstrated his readiness to accept responsibility for his actions in this case both upon his arrest and through his plea. Those factors justify the significant benefits he is receiving from his plea agreement. However, there is no basis for a further downward variance.

In this particular case, the fact that Perez-Torres will likely be deported should not weigh

in favor of a downward variance. His being illegally present in the country is a matter that should be and will be dealt with separately, and should not serve as a basis to lessen the sanctions for his serious criminal conduct.

Perez-Torres is more culpable than Juan Angel Reyes who was sentenced to a time-served sentence, but his culpability is slightly lesser than Miguel Angel Nieto-Romero who received a sentence of 48 months. A sentence of 46 months for Perez-Torres accounts for the varying levels of culpability and is sufficient, but not greater than necessary to accomplish the goals of sentencing.

### D. Supervised release

The government requests that the Court impose the recommended three-year term of supervised release with the standard and special conditions recommended by the United States Probation Office. If Perez-Torres remains within the United States following his term of imprisonment, the recommended conditions are likely to aid in his rehabilitation and reentry. Additionally, the government requests a condition that he be required to partake in community service or to actively seek permission to work if he is permitted to stay in the United States.

\\

\\

\\

\\

**IV.    Conclusion**

Based on the foregoing, the United States requests that this Court sentence Perez-Torres to 46 months in custody, followed by three years of supervised release. This sentence is sufficient, but not greater than necessary to accomplish the goals of sentencing.

Dated this 11th day of September, 2023.

Respectfully submitted,

JASON M. FRIERSON
United States Attorney

*/s/ Jacob H. Operskalski*
JACOB H. OPERSKALSKI
Assistant United States Attorney
